UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRANDON T. McNAIR,

                                  Plaintiff,

    v.                                                   6:23-CV-699
                                                            (DNH/ATB)

UTICA POLICE DEPARTMENT, et al.,

                                  Defendants.
_____

BRANDON T. McNAIR, Plaintiff, pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      The Clerk has sent to the court for review a pro se complaint filed by plaintiff Brandon T. McNair, in which he has sued various defendants based on several civil rights claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I.**    **IFP Application**

      Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

      However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

1

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although

Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaint under the above standards.

## II.    Complaint

Plaintiff alleges that on July 27, 2021 at approximately 10:00 a.m., he was on the "east side" of Utica, New York when the "cops hopped out [and] detained [him and] tried to search [him.]" (Compl. at 4). He further alleges that, based off a general description, the police searched plaintiff because he was "black in a certain area where a man with a gun had been alleged to be there." (*Id.*). Plaintiff was arrested after "running for [his] life in an attempt to keep [the police] from violating [his] rights." (*Id.*). Plaintiff was "thrown in jail" and charged with "possession of an instrument that was found almost an hour after, under some car in the parking lot of a car shop." (*Id.* at 7).

Plaintiff then states that he appeared at a bail hearing in Oneida County Court, with the defendants District Attorney ("DA") McNamara and Judge Michael L. Dwyer. (Compl. at 7). Plaintiff alleges that when Judge Dwyer learned of plaintiff's intention

to post bail, he "then raised it in a clear attempt to make it unreachable post bail reform[.]" (*Id.*). Plaintiff states that he was "denied audience with the Supreme Court and [his] habeas corpus was illegally unheard," having been put "right back in front of [Judge] Dwyer for him to answer[.]" (*Id.*). Plaintiff claims that this is "not how the process works," and that Judge Dwyer "didn't have the authority to answer [his] habeas corpus." (*Id.*).

Plaintiff further alleges that Judge Dwyer and DA McNamara proceeded to "violate [his] rights in every court proceeding leading up to trial." (Compl. at 7). Plaintiff cites to a decision from the Fourth Department relative to his criminal case for the underlying facts surrounding his claims. According to *Matter of McNair v. McNamara*, plaintiff's jury trial commenced on November 1, 2021, at which time a jury was selected and sworn, and three witnesses testified. 206 A.D. 3d 1689, 1690 (4th Dep't 2022). November 2nd was a holiday, during which the trial was recessed. (*Id.*). On November 3rd, Judge Dwyer's secretary notified plaintiff's counsel that the Judge had a cold, wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. (*Id.*). Plaintiff's counsel was notified several days later that the matter would be scheduled for a retrial on November 15th. (*Id.*). Essentially, the Judge believed a mistrial was necessary because it was "physically impossible" for him to come to court and proceed with the trial, while he waited three to five days for the result of his COVID-19 test. (*Id.*). Over plaintiff's counsel's objections, the

4

mistrial was declared as of November 3rd. (*Id.*). The Fourth Department ultimately agreed with plaintiff in concluding that there was no "manifest necessity" for the mistrial, and that the county court abused its discretion in granting the mistrial sua sponte. (*Id.* at 1690-92). Accordingly, the government was prohibited from retrying plaintiff on the underlying indictment based on double jeopardy grounds. Liberally construed, this court interprets plaintiff's claims of constitutional violations in the instant complaint to relate to the underlying trial proceedings as described in *Matter of McNair*. Plaintiff also alleges that the police were "selective [and] omitted certain facts to allow the proceedings to continue," and that DA McNamara "also did not reveal certain facts in order to secure an indictment." (Compl. at 7).

Plaintiff alleges damages including mental and physical injuries sustained during his incarceration. (Compl. at 5). He seeks monetary damages in the amount of twenty million dollars, as well as "punitive damages of relieving the officials of their official capacities." (*Id.*).

## DISCUSSION

### III. <u>Sovereign and Judicial Immunities</u>

The complaint must be dismissed as against named defendants Oneida County Courts and Officials and Judge Dwyer, because they are immune from suit. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign

immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). As both the Oneida County Court and Judge Dwyer are arms of the State, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice.

The complaint against Judge Dwyer in his personal capacity is subject to dismissal on judicial immunity grounds. *See, e.g., Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) (Judicial immunity "shields judges from suit to the extent they are sued in their individual capacities[.]"), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature'") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at *2 (2d Cir. Oct.

17, 2022), *cert. denied*, No. 22-732, 2023 WL 2959393 (U.S. Apr. 17, 2023) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston,* 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976))), *report and recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " *Id.* (quoting *Mireles*, 502 U.S. at 11-12). Here, plaintiff has failed to plausibly allege that Judge Dwyer was acting outside of his judicial capacity or in the absence of jurisdiction. To the extent that plaintiff alleges that his habeas corpus petition was not properly before Judge Dwyer, Article 70 of the New York Civil Practice Law and Rules specifically authorizes a petition for the writ to be made to a county judge being or residing within the county in which the petitioner is detained. N.Y. C.P.L.R. § 7002(b)(4). In the absence of any other allegation suggesting that the general rule regarding judicial immunity can be overcome, the court recommends dismissing with prejudice the complaint as against Judge Dwyer in his individual capacity. *See*

*Edwardsen v. Aloi*, No. 5:17-CV-00202 (LEK/TWD), 2017 WL 1283496, at *3 (N.D.N.Y. Mar. 3, 2017) (recommending dismissal with prejudice on judicial immunity grounds), *report and recommendation adopted*, 2017 WL 1283763 (N.D.N.Y. Apr. 5, 2017).

Plaintiff has also included unidentified "officials" of the Oneida County Court as defendants in the caption of his complaint. There is, however, no specific allegation anywhere in the complaint referencing any other court official who was involved in the alleged violations of plaintiff's constitutional rights. In any event, even if plaintiff had identified another court "official" as a defendant, judicial immunity has been extended to "'certain others who perform functions closely associated with the judicial process.'" *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear

absence of all jurisdiction." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). Thus, it is likely that the unidentified court official defendants would also be protected from suit based on the doctrine of quasi-judicial immunity.

## IV. **Prosecutorial Immunity**

The complaint is also subject to dismissal as against DA McNamara. The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). In *Anilao*, the Second Circuit explained:

> Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id*.; *Imbler*, 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and . . . presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the

9

> immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864. *See also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir.1995) (holding that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id*. (interior quotation marks and citations omitted); *see Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

Liberally construed, in this case plaintiff alleges that DA McNamara violated his rights by "hold[ing] plaintiff in an attempt to retry [him] illegally for 7 months" after the mistrial (Compl. at 7), and for failing to "reveal certain facts in order to

10

secure an indictment" (*id.*). Otherwise, plaintiff generally alleges that DA McNamara violated his rights "in every court proceeding leading up to trial[,] "in the trial [and] after the first trial[.]" (*Id.*). With respect to the indictment, the courts have long held that a prosecutor's determination to bring charges against an individual by presentment of a case to the grand jury is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] . . . lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.") (citing *Imbler*, 424 U.S. at 431 & n. 34); *Pinaud v. County of Suffolk*, 52 F.3d at 1149 (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity. . . ."); *J. & W. Trading & Leasing Inc. v. New York*, No. 5:15-CV-327 (GLS/DEP), 2015 WL 4135961, at *3 (N.D.N.Y. 2015) (granting absolute immunity where prosecutor allegedly presented false testimony before grand jury). Accordingly, plaintiff may not pursue his § 1983 action against DA McNamara based on his alleged failure to disclose evidence to the grand jury.

The court concludes that DA McNamara is also immune from any suit by plaintiff based on his efforts to continue the prosecution of plaintiff's criminal case,

although there is certainly less case law involving this scenario.  Bearing in mind the standard of determining whether the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,' the court cannot conclude that DA McNamara's efforts to retry plaintiff's case after Judge Dwyer granted a mistrial runs afoul of the prosecutor's protected function of initiating a prosecution and presenting the State's case.  *See, e.g.*, *Davis v. State of N.Y.*, No. 90 Civ. 6170, 1991 WL 156351, at *6 (S.D.N.Y. Aug. 6, 1991) (whatever the defendant prosecutors may have done to delay plaintiff's criminal retrial, "they acted in their capacity as advocates in the state's prosecution . . . [and] are entitled to absolute immunity . . . ."), *aff'd sub nom. Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004); *Russo v. Vermont*, No. 1:10-CV-296, 2011 WL 4537956, at *6, 8 (D. Vt. July 29, 2011) (notwithstanding the plaintiff's claim that the prosecutors in his case were "obsessed and won't let go[,]" their decision "to proceed with a retrial . . . is protected by prosecutorial immunity"), *report and recommendation adopted*, 2011 WL 4566303 (D. Vt. Sept. 29, 2011).

There is no evidence that DA McNamara's conduct in this regard fell outside the scope of his function as an advocate.  *See Anilao,* 27 F.4th at 865 ("'[A]bsolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority. . . . Prosecutors thus have absolute immunity in a § 1983 action . . . so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description.' ") (citations omitted).  In particular, there is no suggestion that DA

McNamara's conduct in this respect could be interpreted as an "investigative or administrative task[ ]", for which the prosecutor would only be eligible for qualified immunity.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler,* 424 U.S. at 431 n.33); *see also McDonough v. Smith*, No. 1:15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *17 (N.D.N.Y. Aug. 11, 2022) ("Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.'") (quoting *Buckley*, 509 U.S. at 273); *Moye v. City of New York*, 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012) ("[T]he Second Circuit has distinguished between 'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand, with only the former entitling a prosecutor to absolute immunity.") (quoting *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir.1998)).  Accordingly, the complaint should be dismissed as against DA McNamara based on his absolute prosecutorial immunity.

V.    **Defendant Utica Police Department**

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't,* No. 5:18-CV-1471(GTS/DEP), 2019 WL 981850, at *1 (N.D.N.Y. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008); *see also Turczyn ex rel. McGregor v. City of*

*Utica*, No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014).  Accordingly, the complaint as against defendant Utica Police Department must be dismissed for failure to state a claim upon which relief may be granted.

Even if the court were to construe plaintiff's claims against the Utica Police Department as against the City of Utica, dismissal would still be warranted.  A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell*, in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.").

A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).

Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

"[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

In this case, plaintiff has (1) not identified any of the Utica police officers who allegedly violated his constitutional rights as defendants in this action, and (2) has offered no evidence that any such officer was acting pursuant to a policy or custom of the City when they detained and/or arrested plaintiff, or throughout the course of plaintiff's criminal proceeding. Accordingly, the City cannot be held liable for plaintiff's allegations of false arrest/imprisonment, malicious prosecution or unspecified due process violations, as stated in the complaint.

## VI. Eighth Amendment Cruel and Unusual Punishment

Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment. (Compl. at 7-8). Plaintiff does not specify against whom he alleges this violation of his constitutional rights. (*Id.*). In any event, these protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Accordingly, any claim purportedly brought by plaintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed.

## VII. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to defendant Utica Police Department, because the department may not be sued under § 1983. The court is further recommending dismissal with prejudice as to defendants Judge Dwyer, the

Oneida County Courts and Officials, and DA McNamara, based on their absolute immunity from suit.

Notwithstanding my recommendation that each of the named defendants be dismissed with prejudice, the court cannot say at this early stage of the litigation that plaintiff would be unable to amend his complaint to state a viable claim. Thus, the court recommends providing plaintiff the opportunity to amend his complaint for the limited purpose of asserting those claims alleging constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants. Plaintiff is reminded that if he intends to name the City of Utica as a defendant, he must plead, and ultimately prove, that a deprivation of his constitutional rights was caused by a custom, policy, or usage of the municipality. Likewise, plaintiff must specifically identify any individual law enforcement officer he is alleging violated his constitutional rights. If plaintiff chooses to amend his complaint, he must also specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[1] and it is

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** as against named defendants **UTICA POLICE DEPARTMENT, JUDGE MICHAEL L. DWYER, ONEIDA COUNTY COURTS a/k/a/ ONEIDA COUNTY COURTS AND OFFICIALS, and DISTRICT ATTORNEY SCOTT McNAMARA**, and it is

**RECOMMENDED**, that plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE,** and that, if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be

---

[1] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 26, 2023

*(signature)*
Andrew T. Baxter
U.S. Magistrate Judge